## A05A2254. HIERS v. ESTATE OF HIERS.
(628 SE2d 653)

ELLINGTON, Judge.

Mindy Hiers appeals from a grant of summary judgment in favor of Donald Vance Hiers, a "caveator" who objected to Mindy's application for year's support from the estate of Donald L. Hiers under OCGA § 53-3-1 et seq.[1] In the order appealed, the Superior Court of Brooks County[2] held that the prenuptial agreement entered into between Mindy Hiers ("wife") and Donald L. Hiers ("husband") was valid, binding, and enforceable. The court also found that the wife's acceptance of a $5,000 bequest from her husband's will in lieu of a year's support, her failure to oppose the prenuptial agreement prior to her marriage, and her acceptance of the marriage and its benefits, ratified the agreement and waived her right to contest the validity of the prenuptial agreement and seek a year's support. Finding no error, we affirm.

The record reveals the following undisputed facts. Husband and wife were married in Florida in 1994. The husband was 51; the wife was 43; and the marriage was the second for both. Prior to marrying, the couple met with a lawyer in Florida about entering into a prenuptial agreement. The wife had an opportunity to ask the lawyer questions, but did not. The attorney, however, advised the wife not to sign the agreement. Instead of making further inquiry, the wife

---

[1] The Supreme Court of Georgia transferred this case to this Court, holding that the appeal does not come within its jurisdiction "as a resolution of the appeal requires determination as to questions of law, not equity, regarding the validity of a prenuptial agreement or contract[,]" and that any construction of the will "would be incidental to the questions regarding the prenuptial agreement."

[2] The suit was originally filed in probate court, but upon agreement of the parties, was transferred to the superior court.

executed the document later that day in the presence of witnesses, and her signature was notarized. She admitted that no one forced her to sign.

The wife deposed that she knew her husband would not marry her unless she signed the prenuptial agreement. She understood the agreement provided that, in the event of a divorce, she would receive only $5,000. She also understood that she would only inherit $5,000 from her husband upon his death, as provided for in his will, and that her bequest was also governed by the prenuptial agreement. The wife admitted she had the opportunity to read the agreement, but chose not to do so. She deposed that she signed the agreement of her own free will, and that her husband did not coerce her. There is no evidence that the wife made any inquiry into her husband's financial condition prior to signing the prenuptial agreement, that she read his financial statements, or that she relied on the statements. There is some evidence that the financial statements were attached to the prenuptial agreement as an exhibit. The wife contends she did not need to inquire into her husband's finances because she trusted him and relied on his promise that he would take care of her financially, that she had "nothing to worry about."

The agreement provided that "Husband and Wife desire to enter an agreement establishing division of property, alimony, and all other financial relationships between them in the event of termination of their marriage for any reason, including death or divorce." The parties acknowledge they had children from prior marriages and that the parties "considered this factor in making this Agreement." Further, "neither party wants to have a trial . . . or a contested probate matter in the event of death." The agreement also provided that "[i]n the event of either party's death during the marriage, each party agrees to accept and be bound by the Last Will and Testament of the other party. Neither will make a claim against the other's estate" beyond what is provided for in the will. Finally, the agreement provided that each party "waives and renounces all rights of inheritance each party has from the other party . . . [including] any right to year's support."

In January 2003, with the wife present, the husband executed his last will and testament. The will provided: "I give and bequeath to my wife, Mindy Hiers, in lieu of Year's Support the sum of Five Thousand Dollars as set out in the prenuptial agreement signed prior to our marriage." The wife admitted she asked no questions about the will, but that she understood that her husband "was not leaving anything for [her] in the will." She understood he would leave her "cash or CDs or life insurance . . . something that didn't have to go to probate." Although the wife had a copy of the prenuptial agreement,

at no time during the parties' nine-year marriage did she discuss, question, or contest the terms of the agreement.

The husband died in April 2003. The wife and Donald Hiers' son, Vance, as heirs of the estate, executed an acknowledgment and assent to probate instanter on April 23, 2003. Probate documents revealed that the husband's estate was valued at about $6 million. The husband left the bulk of his estate, an irrigation business, to his son, Vance. In May 2003, the wife accepted[3] the $5,000 that her husband left her in his will. She also received $94,300 in cash from bank accounts. For four months, the wife continued working in her husband's company, receiving a salary. She also continued to live in the marital home.

In September 2003, the wife moved away from the marital home. She contacted the estate's attorney and asked for additional assets from the estate. She also contacted a Savannah attorney who "could give Vance some ideas on how to save from paying taxes, and maybe with Vance doing that, that both he and [she] could benefit." In December 2003, six months after her husband's death, the wife filed a petition for year's support, seeking almost $1 million in cash, 512 acres of land, cars, and personal effects.

1. In her first two enumerations of error, the wife challenges the validity of the prenuptial agreement. First, she contends the agreement did not meet the criteria for a valid prenuptial agreement as set forth in *Scherer v. Scherer*, 249 Ga. 635 (292 SE2d 662) (1982). In addition, she argues that even if *Scherer* is inapplicable, the prenuptial agreement is nevertheless unenforceable because it was obtained by fraud.

In *Scherer*, the Supreme Court held that prenuptial "agreements *in contemplation of divorce* are not absolutely void as against public policy." (Emphasis supplied.) Id. at 640 (2). The court then set forth factors for the evaluation of prenuptial agreements made in contemplation of divorce. Id. at 641 (3) ("We hold that when a superior court in this State is presented with [a prenuptial] agreement *in a divorce proceeding*, the foregoing criteria should be employed in determining whether to enforce the agreement.") (emphasis supplied). However, as the Supreme Court of Georgia has stated, "[Prenuptial] agreements in which a spouse waives his or her rights in the other spouse's

---

[3] Ordinarily, choosing to accept a bequest under a will in lieu of year's support acts as an estoppel to a later action for year's support. *Bowen v. Bowen*, 200 Ga. 572 (37 SE2d 797) (1946). Under Georgia law, if a testator bequeaths property to the spouse "in lieu of Year's Support," then the spouse must make an "election," that is, choose the bequest or the support provided by statute. OCGA § 53-5-5. Although the husband's will in this case puts the wife to an election, the wife could not make such an election – she was contractually prohibited from exercising that choice by the prenuptial agreement. Consequently, we cannot, as Vance Hiers argues, simply hold that an election occurred under OCGA § 53-5-5 that bars the petition.

estate at death (as distinguished from agreements executed in contemplation of divorce) have long been valid in Georgia. *Scherer v. Scherer*, 249 Ga. [at 638]; *Nally v. Nally*, 74 Ga. 669 (1885)." (Emphasis omitted.) *Carr v. Kupfer*, 250 Ga. 106, 107, n. 1 (296 SE2d 560) (1982). In such cases, it appears the courts should give effect to marriage agreements according to the understanding of the parties. *Sieg v. Sieg*, 265 Ga. 384 (455 SE2d 830) (1995). We have found no cases where the court has expressly applied the *Scherer* factors to an analysis of a prenuptial agreement made in contemplation of death.

The agreement between Mindy and Donald Hiers was made in contemplation of *both* divorce and death. However, it is undisputed that the agreement will never be used as a basis for the division of marital assets in a divorce because the husband has died. Nevertheless, pretermitting whether *Scherer* applies given the facts of this case, our review of the record reveals that the trial court's decision warrants affirmance even under *Scherer*. Further, even though the trial court did not specifically address those factors in its order, they were before the court.

The *Scherer* factors are:

> (1) was the agreement obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts? (2) is the agreement unconscionable? (3) [h]ave the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?

*Scherer v. Scherer*, 249 Ga. at 641 (3). Further, "[w]hether an agreement is enforceable in light of these criteria is a decision made in the trial court's sound discretion." (Citation omitted.) *Alexander v. Alexander*, 279 Ga. 116, 117 (610 SE2d 48) (2005).

(a) With regard to the first factor, the wife claims the agreement was procured through fraud, duress, and the nondisclosure of material facts.

(1) *Duress*. Here, there is no evidence of duress. Duress which will avoid a contract

> must consist of threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will. The threats must be sufficient to overcome the mind and will of a person of ordinary firmness.

(Citation and punctuation omitted.) *Alexander v. Alexander*, 279 Ga. at 118 (Sears, P. J., concurring). The evidence shows that the husband

did nothing other than ask for a prenuptial agreement as a condition of the marriage. This is not sufficient to void the contract. *Mallen v. Mallen*, 280 Ga. 43, 45 (1) (b) (622 SE2d 812) (2005) (refusing to marry pregnant woman absent prenuptial agreement held not to be duress).

(2) *Fraud or Misrepresentation of Material Fact.* There is no evidence that the husband's 1994 financial statement contained any material mistakes or misrepresentations. Although the 1994 documents did not list a lake house (that the wife admitted she knew about because she had stayed in it), there is no evidence that the husband was the actual owner of the house at the time of the agreement and, thus, had any duty to disclose it. But, more importantly, there is no evidence that the wife inquired into her husband's financial condition or relied in any way on the 1994 financial statements when she agreed to sign the prenuptial agreement and to accept $5,000 upon her husband's death in lieu of a year's support. Absent evidence of such inquiry or justifiable reliance, the wife can show neither fraud nor a misrepresentation of material fact. *Mallen v. Mallen*, 280 Ga. at 44-47 (1) (a), (c). Finally, the husband's promises to "take care of" the wife are an insufficient basis for a finding of fraud or misrepresentation absent some evidence that the wife made efforts to determine exactly what "take care of" meant. Id. at 45 (1) (a) (rejecting wife's contention that, when the prenuptial agreement was executed, there existed a confidential relationship between the parties that relieved her of responsibility to verify representations regarding the meaning and content of the agreement).

(b) With respect to the second *Scherer* factor, whether the agreement was unconscionable, the wife claims that the disparity in financial situation and business experience rendered the prenuptial agreement unconscionable when executed. She also argues that after nine years of marriage, she should not be left with "no visible means of support, no car, and no place to live." "An unconscionable contract is one abhorrent to good morals and conscience where one of the parties takes a fraudulent advantage of another, an agreement that no sane person not acting under a delusion would make and that no honest person would take advantage of." (Citations and punctuation omitted.) *Mallen v. Mallen*, 280 Ga. at 47 (2). The undisputed evidence shows that the wife entered the marriage with $2,500 and no property, and left the marriage with about $100,000. Moreover, for several months after her husband's death, she remained in the marital home, drove cars belonging to the estate, and was employed by her husband's company — until she chose to leave those things behind. Thus, the wife was not left bereft of resources upon her husband's death. Of course, her net worth is far less than that of the estate. However, the fact that a prenuptial agreement perpetuates an

existing disparity of wealth between the parties does not render it unconscionable. Id.; *Adams v. Adams*, 278 Ga. 521 (603 SE2d 273) (2004).

(c) Finally, there is no evidence satisfying the third *Scherer* factor, changed circumstances. The couple had no children from their marriage and the wife's health and job skills remained unchanged. There are no cases to suggest that a spouse's untimely death, the natural aging of the surviving spouse, or the increase in value of one spouse's assets over time are sufficient as "changed circumstances" such that a prenuptial agreement would be invalidated. In fact, the Supreme Court of Georgia has held that because an increase in wealth is a "foreseeable" change in the parties' circumstances, it is not one that would invalidate a prenuptial agreement. *Mallen v. Mallen*, 280 Ga. at 47-48 (3).

Because the record in this case supports a finding that none of the factors set forth in *Scherer*, supra, would call for a judicial repudiation of the prenuptial agreement, we find no error in the court's order enforcing it.

2. The wife's remaining claim of error, pertaining to the court's findings on waiver, ratification, and estoppel, is moot.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 15, 2006 —

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Kathryn H. Pinckney*, for appellant.

*Langdale & Vallotton, W. Pope Langdale III, William P. Langdale, Jr.*, for appellee.