This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**HAROLD FINKELSTEIN,**

Petitioner-Appellant,

v.                                                                                    **NO. 30,327**

**ANITA KAY FINKELSTEIN**
**k/n/a ANITA KAY McNEER,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Elizabeth E. Whitefield, District Judge**

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

Armand T. Carian
Albuquerque, NM

for Appellant

Kraft & Hunter, LLP
Richard L. Kraft
Roswell, NM

for Appellee

**MEMORANDUM OPINION**

**FRY, Judge.**

This appeal concerns the validity and enforceability of a prenuptial agreement that was executed in Georgia. After initiating divorce proceedings against his wife in New Mexico, Harold Finkelstein (Husband) sought to enforce the terms of a prenuptial agreement (Agreement) executed by him and Anita Kay Finkelstein (Wife) prior to their 1994 wedding in Georgia. Husband appeals the district court's decision to set aside the Agreement based on the court's determination that circumstances had changed since the Agreement was executed so as to render its enforcement unfair and unreasonable. Applying Georgia law, we hold that the district court erred in setting aside the Agreement on this basis, and we therefore reverse and remand for further proceedings consistent with this Opinion.

**BACKGROUND**

Husband and Wife were married in June 1994 in Georgia. Shortly before their marriage, they executed the Agreement after consulting with their respective lawyers. The Agreement provided that its validity and enforceability were to be assessed under the law of Georgia. In the event of the parties' divorce, the Agreement specifically provided that: (1) the parties' assets jointly acquired during marriage would be subject to equitable division, (2) neither party would receive alimony or separate maintenance, and (3) the separate property of each party would remain "their respective sole and separate properties and shall not be subject to any claim for

2

equitable division of property, spousal support, or alimony." The Agreement also included a "mutual release" provision stating that each party waived "any and all claims and rights . . . which he or she may acquire in the separately owned property of the other by reason of the[] marriage." Attached to the Agreement were exhibits listing the parties' respective assets and liabilities, which indicated that Husband and Wife had assets totaling $900,381 and $37,000, respectively, excluding their expectancy interests in inheritances at the time of their marriage.

After their wedding, Husband and Wife resided in Georgia for three years and then moved to Capitan, New Mexico. In 2007, Husband initiated divorce proceedings against Wife in New Mexico. At the time of their separation, Husband was sixty-eight years old and Wife was sixty-four years old. During the divorce proceedings, Husband sought to enforce the terms of the Agreement. After a hearing, the district court issued a letter decision declining to enforce the Agreement. The court then entered a final order that included findings of fact and conclusions of law consistent with the letter decision. The court determined that circumstances had changed since the Agreement was executed so as to render its enforcement unfair and unreasonable. The district court then characterized and divided the parties' assets pursuant to New Mexico law. The district court's decision to set aside the Agreement forms the basis of Husband's appeal.

**DISCUSSION**

The sole issue on appeal is whether the district court erred in refusing to enforce the Agreement. As noted earlier, the Agreement was executed in Georgia and included a provision stating that its validity and enforceability were to be governed by Georgia law in the event of the parties' divorce. The district court stated that it would apply Georgia law in the proceedings below, a decision that neither party challenges on appeal. We therefore apply Georgia law in our review of the district court's decision to set aside the Agreement.

Under Georgia law, three criteria are considered in determining the enforceability of a prenuptial agreement: (1) whether the agreement was "obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts," (2) whether the agreement is unconscionable, and (3) whether "facts and circumstances [have] changed since the agreement was executed, so as to make its enforcement unfair and unreasonable." *Scherer v. Scherer*, 292 S.E.2d 662, 666 (Ga. 1982). In this case, the Agreement included express language directing a court to apply the *Scherer* factors in the event of the parties' divorce.

> [The parties] acknowledge that they have been informed that the law in the State of Georgia governing the enforceability of antenuptial agreements is that such agreements are not given carte-blanche enforcement, but, in the event of the parties' divorce, the trial judge will consider the following: (a) whether the Agreement was obtained through fraud, duress, or mistake, or through misrepresentation or nondisclosure

4

of material facts; (b) whether the Agreement is unconscionable; and (c) whether the facts and circumstances have changed since the Agreement was signed, so as to make its enforcement unfair and unreasonable.

The district court determined that neither the first nor the second *Scherer* factors were present in this case. However, it found that the third *Scherer* factor applied to the parties' divorce in that circumstances had changed since the Agreement was executed so as to render its enforcement unfair and unreasonable.

The district court's order initially indicated that it considered the following to be changed circumstances: "[the] ages of the parties, the length of marriage, the disparity of the parties['] assets and the almost non-existence of a community estate." We note that the court made further specific findings regarding the non-existence of a community estate, many of which were related to Husband's management of his assets and his business throughout the parties' marriage. In addition, the district court cited actions taken by the parties during their marriage that it believed showed that Husband and Wife "worked and managed . . . [H]usband's assets" throughout the marriage rather than "their [community] assets." Although the district court noted that these were "among many other factors" that it considered, we decline to speculate as to what other factors may have constituted changed circumstances that the court may have relied upon to support its holding.

5

On appeal, Husband contends that the district court's application of the third *Scherer* factor to invalidate the Agreement was improper. Consistent with Georgia law, we review the district court's ruling on the enforceability of a prenuptial agreement under an abuse of discretion standard. *Lawrence v. Lawrence*, 687 S.E.2d 421, 422 (Ga. 2009). This means that "we review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous." *Id.* A court can abuse its discretion when it misapplies the law to the facts. *See Alexander Props. Group, Inc. v. Doe*, 626 S.E.2d 497, 499 (Ga. 2006) (holding that "the trial court abused its discretion when it misapplied the law to this case").

In applying the third *Scherer* factor, a district court's inquiry is primarily whether, "taking into account all relevant facts and circumstances, including changes beyond the parties' contemplation when the agreement was executed, enforcement of the antenuptial agreement would be neither unfair nor unreasonable." *Blige v. Blige*, 656 S.E.2d 822, 824 (Ga. 2008). Although a number of Georgia cases have applied the first and second *Scherer* factors, we are aware of only four cases where Georgia appellate courts have considered what changes in facts and circumstances might render a prenuptial agreement unfair and unreasonable. *See Sides v. Sides*, 717 S.E.2d 472, 473 (Ga. 2011); *Alexander v. Alexander*, 610 S.E.2d 48, 49 (Ga. 2005); *Mallen*

6

*v. Mallen*, 622 S.E.2d 812, 814 (Ga. 2005); *Hiers v. Estate of Hiers*, 628 S.E.2d 653, 657 (Ga. Ct. App. 2006). *Mallen* is the most instructive on the issue before us.

In *Mallen*, the Supreme Court of Georgia addressed the third *Scherer* factor for the first time since its adoption of the three-part *Scherer* test for assessing the validity of prenuptial agreements. *Mallen*, 622 S.E.2d at 817. The court determined that foreseeability is the key element in the consideration of changed circumstances. *Id.* The court stated that in assessing facts and circumstances under the third *Scherer* factor, a court should consider whether the alleged changed circumstance was foreseeable at the time the prenuptial agreement was signed. If it was foreseeable, a party cannot later rely on that particular circumstance as a basis for rendering the agreement unfair and unreasonable. *Id.* Applying this reasoning to the facts in that case, the *Mallen* court determined that an increase in the husband's net worth by $14 million during the course of an 18-year marriage was not a changed circumstance because the wife was familiar with the husband's "financial circumstances from living with him for four years prior to marriage and [the wife] must have anticipated that his wealth would grow over the ensuing years." *Id.* At the time the agreement was executed, the wife's net worth was $10,000 while the husband had a net worth of $8.5 million dollars. *Id.* at 814. The prenuptial agreement included financial disclosure forms as attachments to the agreement indicating the parties' assets and liabilities. *Id.*

7

at 816. The court reasoned that since "the continued disparity in their financial situations was plainly foreseeable from the terms of the prenuptial agreement, [the w]ife cannot rely on that as a change in circumstance which renders the agreement unfair." *Id.* at 817.

In the present case, the particular circumstances relied upon by the district court under the third *Scherer* factor were the ages of the parties, the length of the marriage, the financial disparity in the parties' assets, and the non-existence of a community estate. The parties do not dispute the substance of these facts. The salient question under *Mallen* is whether these facts were foreseeable to the parties at the time they entered into the prenuptial agreement. We conclude that a proper application of Georgia law compels the conclusion that each fact was foreseeable to the parties.

The age of the parties and the length of their marriage were clearly foreseeable. Husband was 54 years old and Wife was 51 years old at the time of the marriage. At the time of the district court's decision, Husband was 70 years old and Wife was 66 years old. It is a matter of common sense that the natural aging process is an occurrence that can be anticipated. *See Hiers*, 628 S.E.2d at 658 (noting that there are no Georgia cases suggesting that the natural aging of a surviving spouse is a sufficient changed circumstance to warrant invalidation of a prenuptial agreement). And the length of the parties' marriage—16 years—was a foreseeable possibility. *See*

*Mallen*, 622 S.E.2d at 817 (citing with approval *Reed v. Reed*, 693 N.W.2d 825, 836 (Mich. Ct. App. 2005), which held that the lower court erred by finding that the length of the parties' marriage was a change in circumstance that justified voiding a prenuptial agreement and stating that "[a] long marriage, which is, indeed, the whole idea of marriage, is as easily foreseen as a short marriage"). The Agreement itself includes no provisions premised on the length of the parties' marriage.

As for the district court's reliance on the disparity in the parties' assets as a changed circumstance, the Georgia Supreme Court held in *Sides* that an increase in the husband's net worth was not a changed circumstance where full financial disclosures were made at the time the prenuptial agreement was executed and the wife was aware of the significant disparity between the assets of her husband as a business owner and her own assets prior to their marriage. 717 S.E.2d at 473. In the present case, at the time of their marriage, Wife had a net worth of $37,000 and Husband had a net worth of approximately $805,000. Husband's specific assets included his jewelry business, a Georgia residence, and a number of investment and bank accounts. Husband's financial disclosures also indicated that he had an expectancy interest in an inheritance from his mother's estate. Thus, based on the financial disclosures, Wife was aware at the time the Agreement was executed that there was a large disparity between Husband's assets and her own prior to the marriage. She was also

aware that the value of Husband's assets would increase during the marriage due to his inheritance, and there was no reason for her not to anticipate that the value of Husband's business and other assets would also grow over time. Thus, the disparity in the parties' assets noted by the district court at the time of the parties' divorce essentially mirrored their financial circumstances at the start of marriage and, according to Georgia law, the disparity was not an unforeseeable change in circumstance that would render the Agreement unfair or unreasonable to Wife. *See Mallen*, 622 S.E.2d at 817 (holding that financial disparity was not a changed circumstance); s*ee also Hiers*, 628 S.E.2d at 658 (noting that the Supreme Court of Georgia has held that "because an increase in wealth is a 'foreseeable' change in the parties' circumstances, it is not one that would invalidate a prenuptial agreement").

Finally, we address the final set of circumstances relied on by the district court and emphasized by the Dissent, all of which relate to the "almost non-existence of a community estate." Significantly, Georgia is not a community property state, so the concept of a "community estate" would have no meaning in the context of the Agreement. *See Brown v. Little*, 489 S.E.2d 596, 598 (Ga. Ct. App. 1997) (stating that "Georgia has never subscribed to a community property theory regarding assets acquired during marriage while the marriage exists"). Instead, Georgia has a system

"treating assets as either separate or marital property." *Id.* We must therefore view the district court's findings through the lens of Georgia's concept of marital property.

During the parties' marriage, Husband and Wife worked for Husband's jewelry business and lived in a home in Capitan, New Mexico, that the court determined was Husband's sole and separate property. In setting the Agreement aside, the court specifically found that "Husband's complete control and management of all assets during the marriage worked de facto to minimize the community estate and . . . maximize his separate property assets." The court also found that although the Agreement "gave Husband his business, [it] did not give him separate property ownership of the earnings of the business." After noting that "[e]arnings are community property under New Mexico law[,]" the court determined that "Husband paid himself no salary, so no community estate could be accumulated." It also found significant that "Husband 'borrowed' money from his separate property brokerage account and then . . . paid back sums [from his business profits] greater than these loans to his separate property account." And, thus, it found that Husband's actions of lending the business $106,000 from his separate property brokerage account and then having his business pay back $383,000 worked to "insure[] that there would be no community estate."

11

It is clear that the district court evaluated the parties' circumstances according to the community property concepts of New Mexico law, and the Dissent does the same. This by itself is contrary to the Agreement, which dictated that its interpretation be governed by Georgia law. In addition, the Agreement expressly provided that "any property acquired after the marriage . . . shall be the sole and separate property of the party in whose name the property is titled or held," and that "each party waives . . . any and all claims and rights . . . which he or she may acquire in the separately owned property of the other by reason of their marriage." Furthermore, the Agreement included no specific provision requiring the parties to create a marital estate. To the contrary, the Agreement provided that only jointly acquired assets during the marriage were subject to equitable division.

Given these provisions of the Agreement, it was foreseeable that Husband would maintain and grow his separate assets, including his business, and that he would acquire additional separate assets during the course of the marriage. Husband's actions during the course of the marriage with respect to his separate assets and, specifically, his intermingling of funds between his separate business and brokerage accounts, were actions that were not beyond the contemplation of the parties at the time they executed the Agreement. It was not unreasonable for Husband and Wife to anticipate the possibility of divorce prior to their marriage and to seek to protect their

12

individual assets through the Agreement. *Scherer*, 292 S.E.2d at 666 (noting that it is not against Georgia public policy for parties "prior to marriage to anticipate the possibility of divorce and to establish their rights by contract in such an event as long as the contract is entered with full knowledge and without fraud, duress[,] or coercion").

We are not aware of any Georgia authority that has recognized that the non-existence of a marital estate constitutes a changed circumstance that would render a prenuptial agreement unenforceable. *Cf. Reed*, 693 N.W.2d at 836 (noting that a disparate growth in the parties' separate assets was not a changed circumstance where the parties' prenuptial agreement reflected an intent that the parties "agreed to be captains of their own financial ships and to decide their own destiny" (internal quotation marks and citation omitted)). We conclude that the district court erroneously failed to apply Georgia law in evaluating the enforceability of the Agreement. Georgia law establishes that none of the circumstances cited by the district court would constitute a change in circumstances that would make enforcement of the Agreement unfair or unreasonable. *See Sides*, 717 S.E.2d at 472-73 (upholding prenuptial agreement that left the wife with $250,000 and a car although husband's net worth had doubled during an almost twenty-year marriage and the parties' estate was valued at $8 million at the time of divorce); *see also Mallen*,

13

622 S.E.2d at 814, 817 (upholding prenuptial agreement that gave the wife $2,900 per month in alimony for four years and gave the husband, whose net worth had increased by $14 million during the marriage, all of the assets he entered the marriage with as well as all assets acquired during the marriage); *Adams v. Adams*, 603 S.E.2d 273, 274 (Ga. 2004) (upholding a prenuptial agreement that perpetuated an already existing financial disparity between the parties where there was full and fair disclosure of the parties' assets prior to the marriage and the wife had entered into the agreement voluntarily after consulting with her counsel).

Finally, in response to the Dissent's contention that public policy considerations support the district court's invalidation of the Agreement, we are aware of no authority in New Mexico or Georgia holding that a married couple's move to a community property state renders unenforceable an otherwise valid prenuptial agreement.

**CONCLUSION**

We reverse the district court's decision to set aside the Agreement and remand this case for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

14

**I CONCUR:**


_____

**JONATHAN B. SUTIN, Judge**


**TIMOTHY L. GARCIA, Judge (dissenting).**

**GARCIA, Judge (dissenting).**

I respectfully disagree with the majority and conclude that the district court did not abuse its discretion when it found that the facts and circumstances had changed since the parties entered into the Agreement, thereby making its enforcement unfair and unreasonable.

The district court recognized that both *Scherer* and *Alexander* grant the court equitable power and discretion to approve a prenuptial agreement under Georgia law, either in whole or in part, or refuse to approve it as a whole. Paragraph 3 of the parties' Agreement also recognizes that "a change in the domicile of one or both of the parties could render this Agreement unenforceable." Because the district court found changed circumstances which rendered the enforcement unfair and unreasonable, we must now review the district court's decision regarding the enforceability of the prenuptial agreement for an abuse of discretion. Majority Opinion p. 6. "An abuse of discretion occurs when a ruling is clearly contrary to the

15

logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. When reasons both supporting and detracting from a decision exist, there is no abuse of discretion. *Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326, (Ct. App. 1993).

In reversing the district court's decision, the majority considered the foreseeability of the disparity in the parties' ages and assets, the length of the marriage, and the non-existence of a community estate at the time the parties signed the Agreement. Majority Opinion pp. 8-11. The majority concluded that these factors were all foreseeable under Georgia law and that, as a matter of law, enforcement of the Agreement could not be unfair and unreasonable. Majority Opinion pp. 5, 14.

I believe that the majority improperly reviewed the facts supporting the district court's decision and improperly limited its foreseeability analysis under Georgia law by not analyzing the numerous other factors identified in the district court's written findings to support its determination that the enforcement of the Agreement was unfair and unreasonable. Applying Georgia law, I conclude that Husband's conduct in controlling and manipulating the marital assets once the parties moved to New Mexico, intentionally widening the disparity in wealth at the time of divorce, constituted conduct that was unforeseeable at the time the parties entered into the

Agreement. *See Mallen*, 622 S.E.2d at 817 (recognizing that foreseeability is the key factor in considering whether there are changed circumstances).

As the majority notes, at the time of their marriage, Wife had a net worth of $37,000 plus two expectancy interests in inheritance and Husband had a net worth of approximately $805,000 plus one expectancy interest in inheritance. Majority Opinion p. 3. At the time of divorce, Husband's separate assets totaled in excess of $825,000 while Wife's assets totaled zero, with neither party identifying any further expectancy interests in their previously identified inheritances. The majority asserts that this disparity was foreseeable because Wife was aware of the disparity between Husband's assets and her own prior to the marriage, and she could reasonably anticipate that the value of Husband's business would also grow over time and otherwise increase due to his inheritance. Majority Opinion p. 10. Similarly, the majority asserts the disparity in assets at the time of divorce was foreseeable because it essentially mirrored their financial circumstances at the start of the marriage. Majority Opinion p. 10. I agree with the majority that an increase in a husband's net worth might not, on its own, constitute a changed circumstance invalidating the Agreement under Georgia law. However, the majority erred by not considering the factors relevant to how Husband's intentional conduct created an unforeseeable increase in the disparity between the parties assets that remained at the time of

17

divorce. Instead, the majority decline to speculate as to what other factors the court may have relied upon to support its holding that were changed circumstances pursuant to its application of Georgia law. Majority Opinion p. 5.

It does not require any speculation to consider the other factors relied upon by the district court because these factors were all set forth in detail and clearly stated in the court's written findings and conclusions. The court found that Husband had "complete control and management of *all* assets during the marriage." (Emphasis added.) While in complete control, Husband managed the parties assets so as to manipulate community earnings, build and fix up his residential properties, structure egregious loans and profits between his jewelry business and his brokerage account, and minimize the community estate after moving to New Mexico. In addition, Husband had Wife either working for his separate property jewelry business or working and managing his separate assets. While exercising total control over the marital assets and property, Husband then depleted the entirety of Wife's separate assets and her two inheritances to zero in value, while he protected, preserved, and built up his separate estate by more than $20,000. Significantly, the district court also found that Husband's management of the assets during the marriage "worked de facto to minimize the community estate and replace[,] preserve[,] and maximize his separate property assets." I agree with the district court that, under Georgia law, this conduct

18

by Husband was not foreseeable to Wife at the time the Agreement was signed in Georgia. Such a finding is supported by sufficient evidence and does not constitute an abuse of discretion. In addition, the district court did not abuse its discretion in determining that Husband's manipulation and control of the parties' entire separate and community estates rendered the Agreement unfair and unreasonable under Georgia law.

Under the terms of the parties own Agreement and Georgia law, the district court properly found that Wife presented sufficient evidence to establish the change in circumstance factor created in *Scherer*. Although Husband did present contrary evidence, where sufficient evidence and findings were also presented to support the decision of the district court, there is no abuse of discretion. *Talley*, 115 N.M. at 92.

Finally, Husband's conduct after their move to New Mexico in squandering the community estate for the benefit of his separate assets is a breach of the fiduciary duty owed by spouses to one another in New Mexico. *See Roselli v. Rio Communities Serv. Station, Inc.*, 109 N.M. 509, 514, 787 P.2d 428, 433 (1990) (determining that a spouse's "power to manage and dispose of the community's personal property . . . [is] subject to a fiduciary duty to the other spouse"). In cases such as this one, a prenuptial agreement from a non-community property state cannot necessarily consider or address the distinct community property concerns that will arise when a couple moves

19

to New Mexico and resides here for the vast majority of their married life. As a result, public policy implications will undoubtably arise in these situations. Because of these public policy concerns, our courts should be given broad latitude to impose fiduciary obligations and strictly construe prenuptial agreements from other states that do not recognize or apply community property law in their jurisdiction. Specific to this case, applying New Mexico public policy considerations is legally consistent with the public policy principles that are recognized and applied under Georgia law. *See Scherer*, 292 S.E.2d at 664 ("[T]he enforceability of antenuptial agreements is, of course, a matter of public policy. And it would appear that where the enforcement of a [non-forum] contract in this state draws public-policy considerations into question, those public-policy considerations will be determined according to the laws of this state."). Thus, I would conclude that public-policy considerations should reciprocate in this case and would support the district court's determination that it was unfair and unreasonable to enforce the parties' Agreement in New Mexico where Husband chose to control and manipulate all of the parties assets at the expense of Wife's separate property and the community estate. As a result, I would affirm the district court's decision to set aside the Agreement.

                                                      _____

                                                      **TIMOTHY L. GARCIA, Judge**

20