3-00-0935

No. 3-00-0935

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

In
 
R
e THE MARRIAGE OF ) Appeal from the Circuit Court

)    of the 12
th
 Judicial Circuit

JOHANNE DRAG, ) Will County, Illinois,

)

Plaintiff-Appellant, )

) 

    v. ) No. 97 D 6105

)

RAYMOND F. DRAG, ) Honorable

) Kathleen Kallan,

Defendant-Appellee. ) Judge, Presiding.

________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:________________________________________________________________

The appellant, Johanne Drag, appeals from an order of the circuit court of Will County upholding a pre-nuptial agreement.  On appeal, Johanne argues that the trial court erred in: (1) determining that the pre-nuptial agreement was valid;  (2) holding that proposed testimony to be given by Raymond’s attorney was protected by privilege; (3) enforcing the agreement when it was in violation of a confidential relationship and manifestly disproportionate; (4) improperly shifting the burden of proof at the hearing; (5) declining to modify the pre-nuptial agreement based upon changed circumstances; and (6) failing to allow her request for additional discovery.  We affirm.

Raymond and Johanne were married on August 25, 1989.  Johanne filed a petition for dissolution of marriage on April 25, 1997.  Initially, Johanne moved to dismiss her petition, but Raymond filed a counter-petition for dissolution.  Raymond then moved for a partial summary judgment and the enforcement of a pre-nuptial agreement signed by him and Johanne on August 24, 1989.  In response, Johanne argued that the pre-nuptial agreement was unenforceable because: (1) it was entered into without full disclosure; and (2) the attorney who represented Johanne had a conflict of interest.  After a hearing, the summary judgment motion was denied.  Raymond then filed a petition for declaratory judgment as to the validity of the pre-nuptial agreement.  

At the hearing on the petition it was established that Raymond and Johanne moved in together in 1986.  Three years later they decided to get married.  Raymond insisted on a pre-nuptial agreement.  Raymond contacted his attorney, Herb Rosenberg, to draft the agreement.  Raymond told Rosenberg that Johanne also needed an attorney.  Rosenberg then gave Johanne the names of three attorneys, including Tom Hogan, an attorney who had represented Raymond in a divorce five years earlier.  Johanne contacted Hogan by telephone on August 7, 1989, and scheduled an appointment to meet with him two days later.  
On that date, Johanne met with Hogan for one hour.  Hogan told Johanne that he had previously represented Raymond in his divorce and was somewhat familiar with Raymond’s assets.  Hogan received an oral waiver of the attorney-client privilege from Raymond when he began to work for Johanne.

Rosenberg and Hogan agreed that Hogan would draft the agreement.  Rosenberg, Raymond and Raymond’s business manager prepared Raymond’s financial disclosures for the agreement.  They obtained current appraisals for all of Raymond’s real estate as well as his business, Jimmy’s Diesel.  They gathered tax returns, obtained actuarial statements for Raymond’s retirement accounts and current statements for Raymond’s bank and stock accounts.  Johanne had no assets other than an account with $30 in it and $5,000 in retirement benefits earned from her occasional employment at Jimmy’s Diesel.  Raymond was worth about six million dollars.

The agreement provided that in the case of a divorce, Johanne would be given $1,400 per month for six years.  Johanne would also be entitled to half of the marital property, including furniture purchased subsequent to the marriage.  Marital property was defined as property in which title was taken in both Raymond and Johanne’s name. 

According to Johanne, Raymond told her he would always take care of her and that the agreement was just a formality.  Hogan repeatedly told Johanne that she should not rely on those promises and that the written agreement would control.  Hogan told Johanne that the agreement was not sufficiently generous.  He advised her to delay the wedding in order to allow him time to secure a better deal.  Johanne said she wanted to get married and did not want to wait.  Hogan felt that Johanne was not very concerned about the agreement and never allowed him much leeway to pursue her financial interests as he felt they should be addressed.

The pre-nuptial agreement was signed on August 24, 1989, one day before the wedding.  Hogan had the agreement in final form at 2:30 p.m. that day.  Johanne met with Hogan that day for 2½ hours.  Hogan reviewed the agreement with Johanne, line by line.  He discussed with Johanne what she would receive in the event of either a divorce from Raymond or if he predeceased her.  He again suggested to Johanne to delay the wedding to allow him time to negotiate a more favorable agreement.  She refused.  They then went to Rosenberg’s office.  Hogan and Johanne reviewed Raymond’s financial disclosure, which included a financial statement and about twenty separate documents, including personal and corporate tax returns, appraisals, opinion letters, a business valuation, stock accounts and bank statements.  At that time, Raymond’s business was valued at $4 million.  Johanne initialed each document as it was explained to her.  Johanne also supplied her own tax returns and financial statement, which she signed and Raymond initialed.  After both sides completed the review of the financial disclosures, the attorneys reviewed the pre-nuptial agreement with Raymond and Johanne.  They each initialed or signed each page of the document and were married the next day.   

At the close of evidence, the court found the pre-nuptial agreement to be fully valid and enforceable.  It noted that Johanne was competently represented, that the disclosure of Raymond’s assets far exceeded that required by law, and that Johanne’s execution of the agreement was the voluntary act of a competent, fully-apprised adult.

Johanne then moved to modify the agreement’s six-year maintenance award based on section 10 of the agreement.  Generally, section 10 stated that maintenance may be modified by a court of law if untoward, catastrophic circumstances occurred after the marriage which would subject Johanne to abject poverty or make her a public charge.  The court denied the motion.

Finally, the court held a hearing to determine the distribution of assets.  Johanne and Ray stipulated that Johanne would be paid $150,000 in a lump sum to settle her interest in all joint property other than personal property and the parties’ 1987 tax refund.  She was also awarded $51,000, half the escrowed proceeds from their 1987 tax return.  Johanne also would receive all furniture and items from their home in Hawaii, and one of Raymond’s vehicles. 

I.  VALIDITY OF THE AGREEMENT

On appeal, Johanne first argues that the pre-nuptial agreement is invalid for the following reasons:  (1) it was executed without full disclosure because Raymond concealed his assets; (2) the agreement violates public policy because it will render her a public charge and subject her to abject poverty; and (3) her attorney, Tom Hogan, had a conflict of interest which tainted the advice he gave to her.

The rules governing the interpretation of contracts apply to the interpretation of pre-nuptial agreements.  
Bergheger v. Boyle
, 258 Ill. App. 3d 413, 629 N.E.2d 1168 (1994).  The test for establishing an unconscionable contract is to determine whether the agreement is one which no reasonable person would make and no honest person would accept.  
Saunders v. Michigan Avenue National Bank
, 278 Ill. App. 3d 307, 662 N.E.2d 602 (1996).  An unconscionable contract involves a lack of meaningful choice by one party.  
Saunders
, 278 Ill. App. 3d 307, 662 N.E.2d 602.   

We agree with the trial court that the pre-nuptial agreement is valid and enforceable.  First, there is ample evidence in the record that Raymond made full disclosure of his assets.  Johanne initialed each page of Raymond’s financial disclosure which indicated that at the time the pre-nuptial agreement was signed he was worth about six million dollars.  Second, Johanne’s claim that this agreement will subject her to abject poverty is specious.  In addition to her maintenance award, she received $201,000 in lump sum payments, plus furniture and a vehicle.  

Finally, Hogan’s advice to Johanne was not tainted by his previous relationship with Raymond.  Ideally, an attorney representing a wife in a pre-nuptial agreement should not have had the husband as a former client.  However, Johanne was given the names of two other attorneys and chose Hogan even though she knew that he had represented Raymond in the past.  Additionally, Hogan received a waiver from Raymond so that he could discuss Raymond’s assets with Johanne.  Hogan also advised Johanne several times that the agreement was not generous and that she should postpone the marriage until he could negotiate better terms.  Johanne declined that advice.  For these reasons, we find that Hogan’s previous relationship with Raymond did not invalidate the pre-nuptial agreement. 

II.  PRIVILEGED TESTIMONY

Next, Johanne argues that the trial court erred in holding that proposed testimony to be given by Herb Rosenberg, Raymond’s attorney, was protected by privilege.  Johanne does not identify in her brief what type of testimony she wanted and was denied.  However, Raymond notes that she is referring to deposition questions that Johanne’s attorney asked Rosenberg to which counsel objected as seeking privileged information.  The trial court sustained those objections.

Johanne has waived these claims by failing to identify the specific deposition questions for our review.  
DeFontaine v. Passalino
, 222 Ill. App. 3d 1018, 584 N.E.2d 933 (1991) (issues not adequately presented on appeal are waived).  Therefore, we shall not address this issue.

III.  ENFORCEMENT OF THE AGREEMENT

Johanne also contends that the trial court erred in enforcing the agreement because it was: (1) executed in violation of a confidential relationship; (2) disproportionate in awards of property and maintenance; and (3) improperly shifted the burden of proof at the hearing.

 Parties engaged to be married, prior to signing a pre-nuptial agreement, are in a confidential relationship with each other.  
In re Estate of Hopkins
, 166 Ill. App. 3d 657, 520 N.E.2d 415 (1988).  Further, where the provisions made for the spouse receiving maintenance are largely disproportionate to the value of the other spouse’s estate, there arises a presumption of concealment of the assets.  
Hopkins
, 166 Ill. App. 3d 657, 520 N.E.2d 415.  In such a case, the burden of proof shifts to the party who claims that the agreement is valid.  
Hopkins
, 166 Ill. App. 3d 657, 520 N.E.2d 415.  

As we have previously noted, Raymond’s detailed financial disclosure proved that he did not conceal assets.  Therefore, he has overcome any presumption that he did so simply because Johanne’s maintenance was disproportionate to his income. Further, the pre-nuptial agreement was disproportionate in award of property and maintenance because Raymond and Johanne were not in the same financial condition when they entered into the agreement.  

Finally, both parties agreed at the hearing on the declaratory judgment that Johanne would have the burden of proving that the agreement was not enforceable.  Even if the burden had been placed on Raymond, the evidence amply demonstrated that the pre-nuptial agreement was enforceable.  

IV.  MODIFICATION OF THE AGREEMENT

Johanne also claims that the trial court erred in failing to modify the pre-nuptial agreement based upon section 10 of the agreement.

This court has held that maintenance may be modified after the parties have signed a pre-nuptial agreement when untoward, catastrophic circumstances occur after the marriage which subject a party to abject poverty or if that party is at risk of becoming a public charge.  
In re Marriage of Burgess
, 138 Ill. App. 3d 13, 485 N.E.2d 504 (1985).  However, mere change of economic fortune is not a basis for modification.  
Burgess
, 138 Ill. App. 3d 13, 485 N.E.2d 504.

Section 10 only allows a modification of maintenance if a circumstance not contemplated by the parties occurred, such as extreme poverty.  As we have previously noted, since Johanne is receiving $201,000 in addition to her maintenance award she cannot claim that she will be subject to abject poverty or that she is at risk for becoming a public charge.  Therefore, the trial court did not err in declining to modify the agreement.

V.  ADDITIONAL DISCOVERY

Finally, Johanne argues that the trial court erred in failing to allow additional discovery when requesting a modification of the pre-nuptial agreement.  Here, the record does not contain any detailed discovery requests and only refers to unspecified interrogatories and a request to produce.  Further, Johanne does not refer to specific discovery requests or make any reference to the record in her argument.  Therefore, this issue is waived. 
DeFontaine v. Passalino
, 222 Ill. App. 3d 1018, 584 N.E.2d 933 (1991).  

The judgment of the circuit court of Will County is affirmed.

Affirmed.

BRESLIN and McDADE, J.J., concur.