## S05F0982. MALLEN v. MALLEN.
(622 SE2d 812)

BENHAM, Justice.

At issue in this appeal from a judgment and decree of divorce is the trial court's decision to enforce a prenuptial agreement between the parties. Catherine (Wife) and Peter (Husband) Mallen had lived together unmarried for about four years when Wife got pregnant in 1985. While she was at a clinic to terminate the pregnancy, Husband called to ask her not to have the abortion and to marry him, to both of which requests she agreed. A few days later, nine or ten days before their planned wedding, Husband asked Wife to sign a prenuptial agreement prepared by his attorney. Wife contends Husband told her the agreement was just a formality and he would always take care of her. She took the agreement to an attorney whom she claims Husband paid, who advised her that he did not have time to fully examine it in the days remaining before the wedding. Wife did not consult another attorney or postpone the wedding, but spoke and met with Husband and his counsel about the agreement more than once. She agreed to sign it after a life insurance benefit was increased and the alimony provisions were modified to provide for increases for each year of marriage. The agreement provided that in the event of a divorce, Wife would receive a basic alimony amount to be adjusted for the number of years of marriage, and assets would belong to whomever owned the property originally or received it during the marriage. At the time the agreement was executed, Wife had a high school education and was working as a restaurant hostess, while Husband had a college degree and owned and operated a business. Wife had a net worth of approximately $10,000 and Husband's net worth at the time of the agreement's execution was at least $8,500,000. The record shows that Husband's net worth, as of 2002, appeared to be approximately $22,700,000. After 18 years of marriage and the birth of four children, Husband filed an action for divorce in 2003 and sought to enforce the prenuptial agreement. The trial court held the prenuptial agreement enforceable and incorporated that holding in its final judgment, ruling in accordance with the agreement that Wife was entitled to $2,900 per month in alimony for four years and Husband was entitled to all the assets with which he entered the marriage and all assets accumulated during the marriage. This appeal is from that judgment.[1]

Three factors are to be considered in deciding the validity of a prenuptial agreement: "(1) [W]as the agreement obtained through

---

[1] We granted Wife's application for discretionary review pursuant to this Court's Family Law Pilot Project. See *Wright v. Wright*, 277 Ga. 133 (587 SE2d 600) (2003).

fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts? (2) [I]s the agreement unconscionable? (3) Have the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?" *Scherer v. Scherer*, 249 Ga. 635, 641 (3) (292 SE2d 662) (1982). "Whether an agreement is enforceable in light of these criteria is a decision made in the trial court's sound discretion. [Cit.]" *Alexander v. Alexander*, 279 Ga. 116, 117 (610 SE2d 48) (2005).

1. With regard to the first factor, Wife claims the agreement is infected with fraud, duress, and nondisclosure of material facts.

(a) Fraud. The alleged misrepresentation forming the basis of the fraud claim was a statement Wife avers Husband made to induce her to enter into the agreement, an assertion that the agreement was just a formality and a promise that he would "take care" of her. To avoid the general rule that "in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, . . ." (*Hubert v. Beale Roofing*, 158 Ga. App. 145, 146 (279 SE2d 336) (1981)), Wife asserts that by virtue of their engagement, she and Husband had a confidential relationship which excused her from the duty to verify Husband's statement. While it is true that spouses enjoy a confidential relationship entitling one to repose confidence and trust in the other (*Beller v. Tilbrook*, 275 Ga. 762 (3) (571 SE2d 735) (2002)), Georgia law has not recognized the existence of a confidential relationship between persons who have agreed to marry. A majority of jurisdictions which have addressed the issue have recognized a special relationship between persons engaged to be married that imposes a higher duty with regard to contracts between the parties than exists between other contracting parties. *Cannon v. Cannon*, 384 Md. 537 (865 A2d 563) (2005); *Griffin v. Griffin*, 94 P3d 96 (Okla. Civ. App. 58) (2004); *In re Estate of Hollett*, 150 N.H. 39, 42-43 (834 A2d 348) (2003); *In re Marriage of Drag*, 326 Ill. App.3d 1051, 1056 (762 NE2d 1111) (2002); *Wiley v. Iverson*, 295 Mont. 511, 517 (985 P2d 1176) (1999); *Randolph v. Randolph*, 937 SW2d 815, 821 (Tenn. 1996); *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 466 (628 NE2d 1343) (1994); *Carpenter v. Carpenter*, 19 Va. App. 147, 152 (449 SE2d 502) (1994); *Pajak v. Pajak*, 182 W.Va. 28, 33 (385 SE2d 384) (1989); *Tiryakian v. Tiryakian*, 91 N.C. App. 128, 132 (370 SE2d 852) (1988); *Rosenberg v. Lipnick*, 377 Mass. 666 (389 NE2d 385) (1979); *Merrill v. Estate of Merrill*, 275 Or. 653, 656 (552 P2d 249) (1976); *Allison v. Stevens*, 269 Ala. 288 (112 S2d 451) (1959). However, we believe Georgia law to be more consistent with the states that have rejected such a protective stance. See *In re Marriage of Bonds*, 24 Cal.4th 1, 27 (5 P3d 815) (2000); *Eckstein v. Eckstein*, 129 AD2d 552, 553 (N.Y. App. Div. 1987). In deciding that prenuptial agreements should not be

considered void as against public policy, this Court in *Scherer v. Scherer*, supra, put into place the factors quoted above which are to be considered in judging the validity of such agreements, but did not impose the additional burden of acting in "the utmost good faith," as would be required of persons in confidential relationships. OCGA § 23-2-58. Accordingly, we reject Wife's contention that there existed when the agreement was executed a confidential relationship between the parties which would relieve her of responsibility to verify representations regarding the meaning and content of the agreement.

Applying the rule requiring ordinary diligence in making an independent verification of contractual terms and representations (*Hubert v. Beale Roofing*, supra), Husband's alleged statement that the agreement was a mere formality cannot serve as a basis for a claim of fraud since Wife could ascertain from the clear terms of the agreement that her rights in the event of divorce would be extremely limited. "In the absence of a special relationship or confidence between parties, a matter equally open to the observation of all parties, such as the terms of a written contract, will generally not support a claim of fraud. [Cit.]" *Equifax v. 1600 Peachtree, LLC*, 268 Ga. App. 186, 195-196 (601 SE2d 519) (2004). Husband's alleged promise to take care of Wife is likewise insufficient as a basis for a claim of fraud because it amounts to no more than a promise regarding future action, which is not actionable. Id. at 195 (actionable fraud cannot be predicated upon promises to perform some act in the future or on a mere failure to perform promises made).

(b) Duress. The duress Wife asserts was applied to compel her to execute the agreement was that the marriage would not occur in the absence of the prenuptial agreement and she would be left pregnant and unmarried. As was prefigured in the concurrence penned by then-Presiding Justice Sears in *Alexander v. Alexander*, supra, 279 Ga. at 118, we conclude that insistence on a prenuptial agreement as a condition of marriage "does not rise to the level of duress required to void an otherwise valid contract." Id. See also *In re Marriage of Murphy*, 359 Ill. App.3d 289 (834 NE2d 56) (2005) (merely conditioning marriage upon the execution of an antenuptial agreement does not give rise to duress); *Doig v. Doig*, 787 S2d 100, 102-103 (Fla. App. 2nd Dist. 2001) (ultimatum that without the agreement there would be no wedding does not, in itself, constitute duress); *Liebelt v. Liebelt*, 118 Idaho 845, 848 (801 P2d 52) (1990) (refusal to proceed with the wedding unless the agreement was signed would not constitute duress). Compare *Holler v. Holler*, 364 S.C. 256, 268 (612 SE2d 469) (2005) (pregnant, non-English-speaking wife without employment or funds or ability to consult with counsel, and with expiring visa signed agreement written only in English under duress).

> "Duress which will avoid a contract must consist of threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." [Cit.] "The threats must be sufficient to overcome the mind and will of a person of ordinary firmness." [Cit.]

*Tidwell v. Critz*, 248 Ga. 201, 203 (282 SE2d 104) (1981). Nothing in the record of this case suggests that Wife's free will was overcome by the "threat" of not going through with the wedding. In fact, Wife exercised her free will and declined to sign the agreement in the form it was presented to her, acquiescing only when changes were made improving her position in the event of divorce or Husband's death. The fact of Wife's pregnancy does not make Husband's insistence on the agreement rise to the level of duress. She had already demonstrated her willingness to terminate the pregnancy, so she cannot credibly claim the pregnancy put such pressure on her as to overcome her will.

(c) Nondisclosure of material facts. Attached to the prenuptial agreement executed by the parties were financial disclosure forms on which each party set out their assets and liabilities. Neither form listed income. Citing foreign authority based on the existence of a confidential relationship between persons engaged to be married, Wife asserts the absence of Husband's income from the financial statement constituted the nondisclosure of a material fact which would render the agreement unenforceable. In *Posner v. Posner*, 257 S2d 530 (1972), the Florida Supreme Court held that in light of the confidential relationship of parties to a prenuptial agreement and the inadequate provision for the wife in the agreement under review, the husband's failure to disclose significant sources of income rendered the agreement unenforceable. However, as we held above, parties to prenuptial agreements in Georgia are not by virtue of their planned marriage in a confidential relationship. Wife also cited *DeLorean v. DeLorean*, 211 N.J. Super. 432 (511 A2d 1257) (1986), for the statement in that case that New Jersey law would require a complete written disclosure of all assets and all income. We find that case more persuasive for its holding that under California law, which the agreement specified would be applied and which does not consider persons planning marriage to be in a confidential relationship, a prenuptial agreement is enforceable "[s]o long as the spouse seeking to set aside such an agreement has a general idea of the character and extent of the financial assets and income of the other. . . . Indeed, absent fraud or misrepresentation, there appears to be a duty to make some inquiry to ascertain the full nature and extent of the financial resources of the other." Id. at 441. That statement of law is

consistent with our holding above that persons planning marriage are not in a confidential relationship that will excuse a party from the duty to "exercise ordinary diligence in making an independent verification of contractual terms and representations. . . ." *Hubert v. Beale Roofing*, supra, 158 Ga. App. at 146. In the present case, although the financial statement did not include income, it did reveal Husband to be a wealthy individual with significant income-producing assets, including an 80% ownership share of a business bearing his name. Wife had lived with Husband for four years and was aware from the standard of living they enjoyed that he received significant income from his business and other sources. Under those circumstances and in light of the authority cited above, Wife cannot be said to have demonstrated that the absence from Husband's financial statement of precise income data constituted the nondisclosure of material facts which would render the prenuptial agreement unenforceable.

2. Concerning the second inquiry to be made pursuant to *Scherer v. Scherer*, supra, Wife asserts that the disparity in financial situation and business experience rendered the prenuptial agreement unconscionable when executed. " 'An unconscionable contract is one abhorrent to good morals and conscience . . . where one of the parties takes a fraudulent advantage of another[,] an agreement that no sane person not acting under a delusion would make and that no honest person would take advantage of.' [Cit.]" *William J. Cooney, P.C. v. Rowland*, 240 Ga. App. 703, 704 (524 SE2d 730) (1999). We do not believe the agreement involved here fits that description.

Although Wife emphasizes differences between the facts of this case and the facts in *Adams v. Adams*, 278 Ga. 521 (1) (603 SE2d 273) (2004), we consider that case similar enough to make applicable its holding that the agreement was not rendered unconscionable just because it "perpetuated the already existing disparity between the parties' estates. . . ." Id. The differences emphasized by Wife, a prior marriage and more business experience on the part of the wife in *Adams*, though perhaps relevant to consideration of the first *Scherer* factor, are not particularly relevant to a consideration of whether the agreement here was unconscionable. Given our conclusion above that the agreement is not infected with fraud, and given the absence of any suggestion that Wife suffered from any delusion, the disparities between Wife and Husband in financial status and business experience do not demand a conclusion that the agreement was unconscionable.

3. The remaining factor to be considered is whether circumstances have changed since the execution of the agreement so as to render its enforcement unfair and unreasonable. The changed circumstance which Wife contends in her brief renders enforcement of

the agreement unfair and unreasonable is that Husband's net worth increased by 14 million dollars during the marriage.

Since this Court's adoption in *Scherer v. Scherer*, supra, of the factors to consider in determining the enforceability of prenuptial agreements, we have not had occasion to address directly the question of what changes in circumstance might render a prenuptial agreement unfair and unreasonable. However, in *Curry v. Curry*, 260 Ga. 302, 304 (3) (b) (392 SE2d 879) (1990), in considering a trial court's application of those same factors to uphold a reconciliation agreement, this Court found no error in the trial court's holding that there "has been no change in circumstances that [was] not foreseeable at the time that the agreement was entered into. . . ." That element of foreseeability has been recognized by other states as a key element in consideration of changed circumstances. In *Reed v. Reed*, 265 Mich. App. 131, 147 (693 NW2d 825) (2005), the court held that a significant growth of assets over many years "can hardly be considered an unforeseeable changed circumstance that justifies voiding the . . . prenuptial agreement." The Supreme Court of South Carolina, in *Hardee v. Hardee*, 355 S.C. 382, 390-391 (585 SE2d 501) (2003), agreed with the lower court's holding that the wife's becoming totally disabled was not a change in circumstance that would render the prenuptial agreement unenforceable because "[t]he premarital agreement specifically noted Wife's health problems [and it] was completely foreseeable to Wife that her health would worsen."

In the present case, Wife was familiar with Husband's financial circumstances from living with him for four years prior to marriage and must have anticipated that his wealth would grow over the ensuing years. Since the continued disparity in their financial situations was plainly foreseeable from the terms of the prenuptial agreement, Wife cannot rely on that as a change in circumstance which renders the agreement unfair.

Because the record in this case supports a finding that none of the factors set forth in *Scherer v. Scherer*, supra, call for a judicial repudiation of the prenuptial agreement signed by the parties, we conclude the trial court did not abuse its discretion in enforcing the agreement.

*Judgment affirmed. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Hines, J., who dissent.*

SEARS, Chief Justice, dissenting.

Because I disagree with the majority's conclusion that the parties' prenuptial agreement is valid, I dissent.

In *Scherer v. Scherer*,[2] this Court held that a prenuptial agreement is unenforceable if there was a "nondisclosure of material facts" when the agreement was entered. Thus, under *Scherer*, parties entering a prenuptial agreement have a duty to disclose material facts even absent the presence of a confidential relationship. By necessity, whether a fact is material to a prenuptial agreement will depend on the property and alimony issues that are addressed in the agreement. In the present case, Mr. Mallen's attorney prepared a prenuptial agreement that significantly limited Ms. Mallen's right to alimony. The agreement provides that, in the event of a divorce, Ms. Mallen would be entitled to $1,000 per month in alimony, to be increased $100 a month for each year of the parties' marriage, with Ms. Mallen's right to alimony to terminate four years after the date of the parties' divorce decree. Because a party's income is a critical factor in determining the appropriate amount of alimony,[3] Mr. Mallen's income was material to the prenuptial agreement. In this regard, it is undisputed that, at the time the parties entered the prenuptial agreement, Mr. Mallen did not disclose his income to Ms. Mallen and that his income was approximately $560,000 per year.

Because this material fact was not disclosed to Ms. Mallen, I conclude that the parties' prenuptial agreement is unenforceable. I therefore dissent to the majority opinion.

I am authorized to state that Presiding Justice Hunstein and Justice Hines join in this dissent.

DECIDED NOVEMBER 21, 2005.

*Warner, Mayoue, Bates, Nolen & Collar, Edward E. Bates, Jr., Andrea M. Dyer*, for appellant.

*Davis, Matthews & Quigley, Richard W. Schiffman, Jr., Kurt A. Kegel*, for appellee.

[2] 249 Ga. 635, 640-641 (292 SE2d 662) (1982).

[3] See *McGinn v. McGinn*, 273 Ga. 292, 292-293 (540 SE2d 604) (2001).