**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 23, 2024**

# In the Court of Appeals of Georgia

A24A0961. ARLOTTA v. ARLOTTA.

PIPKIN, Judge.

After Brook T. Arlotta filed for divorce against Andrew J. Arlotta, Andrew filed a motion to enforce the parties' prenuptial agreement. The trial court granted in part and denied in part Andrew's motion, and he filed an application for interlocutory review, which this Court granted. On appeal, Andrew contends that the trial court abused its discretion in denying, in part, the motion to enforce. For the reasons set forth below, we reverse that portion of the court's ruling.

The record shows that Andrew and Brook met sometime in 2010, and they were engaged in September 2011. On September 27, 2012, shortly before their wedding, they executed a prenuptial agreement in Minnesota. The agreement provided that both parties agreed to waive "any and all statutory interests of any kind" in any separate

property; defined separate property as all property owned by either party prior to the marriage or acquired by either party as a gift during the marriage, including all income from such property; and provided, as a general matter, that the parties' separate property should not be subject to division in the event of a divorce and should not be considered in dividing the parties' marital estate.

Specifically, the agreement provided:

4.1 *Property Settlement.* In the event of a dissolution of the parties' marriage, whether by annulment, legal separation or divorce, neither [party] shall have or acquire any right, title, claim or interest in the Separate Property of the other, and each party shall retain his or her Separate Property as though no marriage had ever taken place between the parties; nor shall either party or any court be entitled to consider such Separate Property in determining any property settlement arising out of or as a result of a dissolution of the parties' marriage. The parties' property other than Separate Property shall be divided equally between the parties, subject to any outstanding indebtedness which shall be shared equally.

4.2 *Alimony, Support and Maintenance.* In the event of a dissolution of the parties' marriage, whether by annulment, legal separation or divorce, any alimony or maintenance award to either party shall be determined by the court having jurisdiction over the dissolution of the parties' marriage; provided that the court shall not be entitled to consider

either party's Separate Property in determining any such alimony or maintenance.

According to the agreement, each party had consulted with counsel. The parties also attached financial disclosure statements to the agreement. Andrew's financial disclosure statement showed that he was the beneficiary of a trust created by his father and held significantly more assets than Brooke, including a partial interest in a professional sports team.

During the marriage, the parties had three children and moved to Georgia. They separated in January 2022, and that same month, Brooke filed for divorce. Andrew answered and filed a motion to enforce the parties' prenuptial agreement. In response, Brooke argued that the prenuptial agreement was unenforceable. Specifically, she asserted that the prenuptial agreement, as a whole, was unenforceable because Andrew did not provide a full and fair disclosure of his financial status, the agreement was unconscionable, and there had been a change in circumstances. She also argued that the agreement was unenforceable because it failed to distinguish between marital and separate property and contradicted itself in that it mandated an equal division of marital property but required the court to consider both the laws of the state in which the parties reside and Minnesota law. Finally, she argued that the provisions

prohibiting the court from considering the parties' separate property were against public policy.

The matter proceeded to a hearing. Applying Georgia law,[1] the trial court granted in part and denied in part Andrew's motion to enforce the prenuptial agreement. Specifically, the court granted the motion to enforce as it related to the identification and allocation of the parties' separate property. However, the court denied the motion to enforce to the extent that the agreement limited its consideration of the parties' separate property in determining the equitable division of marital property, alimony, attorney fees, or any other determination based on the consideration of the parties' financial circumstances. Thereafter, Andrew filed a motion for reconsideration, which the trial court never ruled on, and he also obtained a certificate of immediate review. This Court granted Andrew's subsequent application for interlocutory review, see Case No. A24I0096 (Jan. 3, 2024), and this appeal follows.

---

[1] Although the parties lived in Minnesota when they entered into the prenuptial agreement, and the agreement provided that it would be construed according to the laws of Minnesota, the trial court determined that the enforceability of a prenuptial agreement is a matter of public policy determined by the laws of Georgia. See, e.g., *Scherer v. Scherer*, 249 Ga. 635, 638 (1) (292 SE2d 662) (1982).

We begin with a review of the relevant law and history. Ordinarily, when parties divorce, the trial court has broad discretion to make an equitable division of marital property, based on its consideration of all of the relevant circumstances. See *Zekser v. Zekser*, 293 Ga. 366, 367 (1) (744 SE2d 698) (2013). Similarly, in determining alimony, trial courts are authorized by statute to consider a variety of factors, including the financial resources of each party. OCGA §§ 19-6-1; 19-6-5. The same is true with regard to attorney fees in divorce actions. OCGA § 19-6-2. However, as a matter of general contract law in Georgia, "parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." *Hall v. Gardens Svcs.*, 174 Ga. App. 856, 857 (332 SE2d 3) (1985).

Prior to 1982, prenuptial agreements were widely considered – in Georgia and elsewhere – to be absolutely void as against public policy because they were "in contemplation of divorce." *Scherer v. Scherer*, 249 Ga. 635, 638 (2) (292 SE2d 662) (1982). However, in *Scherer*, the Georgia Supreme Court rejected this bright-line rule and held that "[p]ublic policy is not violated by permitting . . . persons prior to marriage to anticipate the possibility of divorce and to establish their rights by contract in such an event as long as the contract is entered with full knowledge and without

fraud, duress or coercion." (Citation and punctuation omitted.) Id. at 640 (2). See also 5 Williston on Contracts § 11:8 (4th ed.) (explaining that in making prenuptial agreements, the parties "may define their rights in property and they may thereby vary substantially those property rights which would otherwise arise on their marriage by operation of law, superseding, in essence, statutory or common-law rules on that subject") (footnotes omitted).

In determining whether to enforce a prenuptial agreement, "the trial court has discretion to approve the agreement in whole or in part, or refuse to approve it as a whole." (Citation and punctuation omitted.) *Lawrence v. Lawrence*, 286 Ga. 309, 309 (1) (687 SE2d 421) (2009). In making this determination, the trial court should "employ basically three criteria": "(1) was the agreement obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts? (2) is the agreement unconscionable? (3) [h]ave the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?" *Scherer*, 249 Ga. at 641 (3). Moreover, a prenuptial agreement is not unenforceable "just because it perpetuate[s] the already existing disparity between the parties' estates." (Citation and punctuation omitted.) *Mallen v. Mallen*, 280 Ga. 43, 47 (2) (622 SE2d 812) (2005).

This Court evaluates "a trial court's ruling regarding the enforceability of an antenuptial agreement under the familiar abuse of discretion standard of review." *Lawrence*, 286 Ga. at 309 (1). "Although this standard of review is deferential, it is not toothless. An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." (Citations and punctuation omitted.) *Eagle Jets v. Atlanta Jet*, 347 Ga. App. 567, 576 (2) (c) (820 SE2d 197) (2018). Under the abuse of discretion standard, we review the trial court's legal holdings de novo. *Lawrence*, 286 Ga. at 309 (1).

With these general principles in mind, we turn to the merits of this case. Andrew contends that the trial court abused its discretion in denying, in part, his motion to enforce the prenuptial agreement. We agree.

Here, in applying the *Scherer* test, the trial court found that the prenuptial agreement was not obtained through misrepresentation, mistake, non-disclosure of a material fact, fraud, or duress; the agreement was not unconscionable in that it permitted the court to consider Andrew's income accumulated during the marriage, equitably distribute martial property, and award alimony; and the facts and circumstances of the parties had not changed such that the enforcement of the

7

agreement was unfair.[2] After finding that the agreement did not run afoul of the test set forth in *Scherer*, the trial court nevertheless found that some of the terms of the prenuptial agreement, specifically, paragraphs 4.1 and 4.2, were against public policy and directly contrary to Georgia law because these provisions barred the court's ability to consider the parties' separate property in determining alimony and the equitable division of marital property.

Having determined that the prenuptial agreement did not violate the three-part test set forth in *Scherer*, it is not clear that there were any other factors that the trial court could properly consider in determining whether the agreement was enforceable. The Georgia Supreme Court has suggested that the criteria set forth in *Scherer* are exclusive and exhaustive. *Dove v. Dove*, 285 Ga. 647, 650 (5) (680 SE2d 839) (2009) ("[W]e did not say in *Scherer* and subsequent cases that the criteria in *Scherer* were merely some of the considerations to be used in determining the enforceability of prenuptial agreements. We stated they were *the* criteria to be used.") (emphasis in original); *Chubbuck v. Lake*, 281 Ga. 218, 219 (1) (635 SE2d 764) (2006) ("We have been unable to find a case in which an antenuptial agreement made in contemplation

---

[2] As Brooke has not appealed from this portion of the trial court's ruling, we will not address it in this opinion.

of divorce has been ruled void and unenforceable for a reason other than failure to live up to the criteria set out by this Court in *Scherer*[.]").

Furthermore, Georgia courts have consistently held enforceable prenuptial agreements that limit the trial court's discretion with regards to the division of property and award of alimony so long as the three-part test set forth in *Scherer* was met. See, e.g., *Lawrence*, 286 Ga. at 312-315 (4) & 315 (Hunstein, C. J. dissenting) (finding enforceable under *Scherer* prenuptial agreement in which wife waived alimony); *Mallen*, 280 Ga. at 48 (3) (finding enforceable under *Scherer* prenuptial agreement that awarded wife alimony in the amount of $2,900 per month for four years, despite eighteen years of marriage and husband's net worth of $22,700,000 at the time of the divorce); *Adams v. Adams*, 278 Ga. 521, 521-523 (1) (603 SE2d 273) (2004) (finding enforceable under *Scherer* prenuptial agreement that awarded wife $10,000 for each year of marriage with a cap of $100,000, despite husband's assets being worth more than $4.5 million at the time of the marriage); *Scherer*, 249 Ga. at 635-636, 641 (4) (finding enforceable prenuptial agreement in which wife released any right to husband's separate property, worth $20 million, but she could seek alimony and an

equitable division of other assets). Brooke has pointed to no cases[3] – and this Court could find none – in which a prenuptial agreement was held unenforceable as against public policy because its provisions were inconsistent with Georgia statutory law. See, e.g., *Chubbuck*, 281 Ga. at 219 (1). So long as the *Scherer* test is met,[4] Georgia law permits parties to enter into prenuptial agreements that waive benefits that they otherwise would have been entitled to by statute.

Accordingly, we reverse the portion of the trial court's ruling denying, in part, the motion to enforce.

*Judgment reversed. Barnes, P. J., and Gobeil, J., concur.*

---

[3] On appeal, Brooke argues that the trial court properly "struck" paragraphs 4.1 and 4.2 from the agreement because these provisions are ambiguous under the rules of contract construction. See generally *Langley v. MP Spring Lake*, LLC, 307 Ga. 321, 323 (834 SE2d 800) (2019) (setting forth the "familiar framework of contractual construction"). However, Brooke argued below that these provisions violated public policy. She did not argue below that paragraphs 4.1 and 4.2 were ambiguous as a matter of contract law, and the trial court did not rule on whether these provisions were ambiguous as a matter of contract law. Accordingly, we decline to address this argument on appeal. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court [and] absent special circumstances, an appellate court need not consider arguments raised for the first time on appeal.") (footnotes omitted).

[4] As set forth above, Brooke has not appealed from the trial court's ruling that the agreement met the *Scherer* test. See footnote 2, above.