2025 IL App (1st) 242448-U

No. 1-24-2448

Order filed December 19, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| AGNIESZKA DUDA, | ) | Cook County. |
| | ) | |
|     Petitioner-Appellant, | ) | No. 23 D 2362 |
| | ) | |
|   v. | ) | Honorable |
| | ) | Andrea Webber, |
| JOHN DUDA, | ) | Judge, Presiding. |
| | ) | |
|     Respondent-Appellee. | ) | |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mitchell and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1 *Held*:    We affirm where the circuit court did not err in finding that the parties' premarital agreement was valid and not unconscionable where petitioner failed to meet her burden of establishing the statutory requirements of section 7(a)(2) of the Illinois Premarital Agreement Act (750 ILCS 10/7(a)(2) (West 2022)) for determining whether a premarital agreement is unconscionable.

¶ 2 Petitioner Agnieszka Duda (Agnes) appeals from the circuit court's grant of respondent John Duda's (John) petition for declaratory judgment that the parties' premarital agreement[1] was valid and the denial of her motion to reconsider. On appeal, Agness contends that the circuit court erred in finding that the premarital agreement was not unconscionable. For the following reasons, we affirm.

¶ 3                                     BACKGROUND

¶ 4 Agnes and John were married on July 7, 2007, 10 days after they executed a premarital agreement. Agnes filed a petition for dissolution of marriage on March 24, 2023, with no mention of the premarital agreement. On April 26, 2023, John filed a petition for declaratory judgment pursuant to section 2-701 of the Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2022)), requesting that the circuit court find the premarital agreement valid and enforceable. Because the issue raised in the appeal involves the parties' premarital agreement, we confine our discussion only to the facts relevant to this issue.

¶ 5 On June 14, 2024, the circuit court held an evidentiary hearing on John's motion for declaratory judgment. Several witnesses testified at the hearing.

¶ 6 Attorney Christopher Koczwara testified that he had been practicing law for 13 years at the time he represented Agnes for the execution of the premarital agreement. His main areas of practice were real estate, business transactions, estate planning, probate and breach of contract litigation. Koczwara testified that he represented Agnes regarding the premarital agreement in 2007 after she

---

[1] While the parties' agreement was titled as an antenuptial agreement, we note that it was executed after January 1, 1990, and is thus subject to the Illinois Uniform Premarital Agreement Act (Premarital Agreement Act) (750 ILCS 10/1 *et seq.*(West 2022)). We will therefore refer to it as a premarital agreement.

contacted him by phone to see if he did that kind of work and spoke Polish. Koczwara received a copy of the premarital agreement on June 25, 2007, and was informed that the wedding date was July 7, 2007. The premarital agreement, including the parties' financial disclosures, had been drafted by John's attorney, Howard Hoff. Koczwara met with Agnes for an hour on June 27, 2007, but could not recall if he spoke with Agnes in only Polish or both languages. He stated that Agnes was not cognitively impaired and she did not appear coerced. Koczwara did not know if Agnes could read the document in English. Koczwara testified that he translated the document paragraph by paragraph to Agnes during their meeting and he made two minor changes to the agreement. He was satisfied that Agnes understood the meaning of the paragraphs of the agreement and wanted to sign the agreement. Koczwara testified that he did not verify John's financial information, he did not provide a translated copy of the agreement to Agnes (it would have been sent out for translation if requested as that was not performed in his office), did not memorialize any of the items discussed, did not know whether Agnes saw the document prior to coming to his office and he neither encouraged nor dissuaded Agnes from signing the premarital agreement. Koczwara stated that he spent a total of 2.25 hours on this matter but usually spent more time on premarital agreements. He wrote a letter to Agnes in Polish on June 28, 2007, seeking $225 as payment for his services.

¶ 7 John testified that he first met Agnes briefly in 2001 before she returned to Poland. They met again in 2003 while Agnes was in the United States for vacation. Agnes subsequently moved into his home in March 2004 as a boarder and she paid rent. Agnes was studying English on a student visa when she arrived in 2004. She also worked for John's mother at a travel agency for Polish clients. Agnes did not have a green card, and his mother sponsored her for the student visa. To

maintain her student visa, Agnes took classes at the BIR Training Center. John proposed to Agnes in February or March 2007, and they were married on July 7, 2007, in Chicago. John testified that he made a full disclosure on his financial affidavit that had been prepared by his attorney, Howard Hoff. John further testified that he and Agnes spoke both English and Polish, but predominately Polish. John stated that Agnes knew enough English at the time of execution to understand the contract.

¶ 8 Urzula Galica met Agnes in Spring 2004 at the BIR Training Center while taken English as a second language classes for a year and a half. She stated that Agnes' English was very basic and that she never spoke to Agnes in English, even in 2007. Galica stated that Agnes had no English-speaking friends at the time of Agnes' wedding in 2007, and that Agnes' English had not improved much from 2004 to 2007.

¶ 9 Agnes testified that she was born in Poland and first came to the United States in 2001 and met John briefly at his employer's house. In 2003, Agnes returned to the United States, rented an apartment and met John again. She stated that John suggested that she rent a room at his house, where she stayed for a month before returning to Poland. Agnes subsequently returned to the United States on March 30, 2004, on a tourist visa when she was 27 years old. She moved into John's house and paid him rent while she worked for his mother's travel agency. John's employee helped her apply for a student visa because Agnes did not have an attorney to help her with the process. Agnes studied English at the BIR Training Center, and John's mother sponsored her green card through her travel agency. Agnes testified that she attended the school merely to keep her legal status. John's mother and the customers communicated in Polish. Agnes stated that when she was in the final stages of getting her green card, she and John decided to get married rather than

pay $6000 to continue classes and maintain her student visa. Agnes testified that she wanted to stay in the United States but did not want to pay the $6000.

¶ 10    Agnes testified that she had almost no English fluency in 2003, and since she worked for the Polish travel agency, her fluency did not "markedly" improve. Agnes stated that she and John spoke only Polish at home prior to the marriage, and she did not have any English-speaking friends in 2007.

¶ 11    With respect to the premarital agreement, Agnes testified that John drove her to the attorney's office, and her lawyer was referred by John's attorney. Agnes stated that John said prenuptial agreements were common in America. Agnes did not see the document before going to the attorney's office, and she spoke with the attorney in Polish. The document was not translated into Polish, and the attorney did not make any suggestions regarding substantive changes. Agnes testified that she thought the premarital agreement was another form to sign before going to court and getting married. Agnes signed the agreement on June 27, 2007, and stated that the wedding ceremony on July 7, 2007, was dictated by her immigration status.

¶ 12    Agnes subsequently was employed at a bank in 2009 servicing Polish-speaking customers. Agnes stated that she still did not understand some of the terms in the premarital agreement and did not understand them in 2007. Contrary to Koczwara's testimony, Agnes testified that the terms were not explained to her before she signed, she was not advised of her rights if there was no premarital agreement, her attorney did not explain the difference between marital and nonmarital property, and she did not know what maintenance was. Agnes indicated that she believed she had no choice in signing the document.

¶ 13    On cross-examination, Agnes testified that she took two or three semesters of English while in Poland and that she was 30 years old when she signed the premarital agreement. As of the hearing date, Agnes had been in the United States for 20 years, her English had improved and she took an English proficiency exam in December 2020.

¶ 14    After the evidentiary hearing, the circuit court entered its written order on John's petition on August 5, 2024, finding that the premarital agreement was valid and enforceable and granted John's petition for declaratory relief. In the order, the circuit court indicated that it heard testimony and weighed the credibility of the parties to establish the facts surrounding the events leading up to the signing of the agreement. The court found that John testified credibly, and that while Agnes mostly testified consistently with John, some aspects of her testimony were self-serving and tailored to fit her argument. The circuit court found that neither party argued that Koczwara was not credible in his testimony, and further that Agnes was given a copy of the agreement on the day of her meeting with him and was given time to review the document and ask questions.

¶ 15    The court found that Agnes failed to show by clear and convincing evidence that the premarital agreement was procedurally or substantively unconscionable. Relying on caselaw that interpreted premarital agreements prior to the enactment of the Premarital Agreement Act of 1990 (750 ILCS 10/1 *et seq.* (West 2022)), the circuit court found that there were two considerations in determining whether the agreement was unconscionable: (1) the conditions under which the agreement was made; and (2) the economic circumstances of the parties as a result of the agreement. See *In re Marriage of Richardson*, 237 Ill. App. 3d 1067 (1992).

¶ 16    The court found that conditioning marriage on the execution of the premarital agreement did not constitute coercion as the parties could have decided to remain single, and they did not

have children, joint business or accounts that would have required the untangling of funds. Additionally, the court found that Agnes was not under duress, that John did not make any false promises to induce her to sign the agreement, and John did not promise Agnes that if she moved from Poland to the United States that he would marry her. Moreover, Agnes did not testify that there was no reason she could not have returned to Poland if she chose not to sign the agreement and marry John. The court noted that Agnes testified that her paperwork for her green card was completed and they decided to get married to save the $6000, which showed that she had an alternate option to exercise in order to stay in the United States, even if it was less desirable. Agnes could have paid the fee and continued in school to stay in the United States, but she and John made an "educated decision" to get married instead. The court noted that Agnes testified that she "decided let's give it a try, and I took off from my work, like I'm paid off. If it works, it works. If not, you know, it's not." The court found that it was undisputed that Agnes was not fluent in the law, but she did have an attorney to review the document and to answer her questions. The court rejected Agnes' argument that the short time between the signing of the premarital agreement and the wedding was a factor to invalidate the agreement, noting that the parties married at City Hall, there was no evidence of a large amount of money invested in a wedding or guests to disappoint if the marriage did not occur, and found that, while timing could be a factor, the statute did not require a minimum waiting period. The court also rejected Agnes' assertion that the premarital agreement was unconscionable because she did not speak English at the time, finding that, while English was not Agnes' first language when the agreement was signed, Agnes used an attorney that spoke Polish and she had studied the English language before she left Poland and while living in the United States.

¶ 17    The circuit court also determined that the premarital agreement was substantively conscionable with the exception of Section 10B regarding maintenance, noting that substantive unconscionability encompassed a contract where a term was so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. The court also noted that this court has found that one party's agreement to marry is and of itself sufficient consideration for financial concessions by the other party in the context of premarital agreement. *In re the Marriage of Barnes*, 324 Ill. App. 3d 514, 527 (2007). The court found that Koczwara testified that Agnes understood John's disclosure of his wealth and assets and understood that her wealth and assets were smaller than John's; Agnes had the opportunity to make revisions, and he explained to Agnes her rights if she was to get divorced without a premarital agreement. The court noted Agnes' testimony that she told Joh she was not marrying him for his money. The court found that the contract will not leave Agnes destitute upon the divorce and struck the provision in the premarital agreement regarding maintenance because it was noncompliant with the law, was unconscionable and invalid. Although the circuit court did not explain how the maintenance provision was noncompliant, the circuit court nonetheless concluded that the remainder of the premarital agreement was valid and enforceable.

¶ 18    Agnes filed a motion to reconsider on September 5, 2024, contending that the circuit court erred in finding that the contract would not leave Agnes destitute upon the divorce as John had filed subsequent pleadings indicating that there was no marital estate. Agnes also challenged the court's findings that she was well-educated and had studied English before she left Poland and while living in the United States, and that she had the opportunity to make changes to the premarital agreement before signing it. John responded that there was no new evidence, no changes in the

law and that the circuit court did not misapply the law. At the hearing on the motion to reconsider, Agnes provided the court with this court's decision in *In re Marriage of Dimitrov*, 2024 IL App (1st) 231794-U, where a postnuptial agreement was found substantially unconscionable. The circuit court denied the motion to reconsider on November 12, 2024, and included Rule 304(a) (eff. Mar. 8, 2016) language that there was just reason to delay enforcement or appeal. Agnes filed her timely notice of appeal on December 11, 2024.

¶ 19                                    ANALYSIS

¶ 20    On appeal, Agnes contends that the circuit court erred in finding the premarital agreement was procedurally and substantively conscionable when it was executed and granting John's motion for declaratory judgment. Agnes specifically argues that the terms of the premarital agreement are "objectively grossly one-sided, financially oppressive to her and substantively unconscionable." She further argues that according to the premarital agreement, upon death or dissolution, Agnes would receive no property as there is no marital estate; she would receive none of the earnings, investment or retirement assets accrued by John during the marriage, and she would only receive her net nonmarital assets of $38,000, and any retirement and savings she earned during the marriage. Agnes asserts that the pending divorce would leave her in a state of penury while John will be awarded millions of dollars in real estate, his business, other investment assets and cash.

¶ 21                              A. Standard of Review

¶ 22    The appropriate standard of review to be applied to declaratory judgments depends on the underlying questions at issue and the nature of the proceedings in the circuit court. *Kranzler v. Kranzler*, 2018 IL App (1st) 171169, ¶ 39. A premarital agreement is a contract and the interpretation of a contract and whether a valid contract exists are determinations we review *de*

*novo*. *Id.* We review factual issues under the manifest weight of the evidence standard, that is, we reverse only if an opposite conclusion is clearly apparent. *Id.* The test for establishing an unconscionable contract is to determine whether the agreement is one which no reasonable person would make and no honest person would accept. *In re Marriage of Drag*, 326 Ill. App. 3d 1051, 1055 (2002). An unconscionable contract involves a lack of meaningful choice by one party. *Id.*

¶ 23    John filed his petition for declaratory judgment under section 2-701 of the Code. The purpose of section 2-701 is to allow the court to address a controversy one step sooner than normal, after a dispute has arisen but prior to any action which gives rise to a claim for damages or other relief. *Kranzler*, 2018 IL App (1st) 171169, ¶ 53.

¶ 24    Subsection (a) of that statute provides that a court

> "may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any * * * contract or other written instrument, and a declaration of the rights of the parties interested. * * * The court shall refuse to enter a declaratory judgment or order, if it appears that the judgment or order, would not terminate the controversy or some part thereof, giving rise to the proceeding." 735 ILCS 5/2-701(a) (West 2022).

¶ 25    Under subsection (b), 'declaration of rights, as herein provided for, may be obtained by means of a pleading seeking that relief alone, or as incident to or part of a complaint, counterclaim or other pleading seeking other relief as well, and if a declaration of rights is the only relief asked, the case may be set for early hearing as in the case of a motion." 735 ILCS 5/2-701(b) (West 2022).

¶ 26              B. Validity and Enforcement of the Premarital Agreement

¶ 27    As noted above, Agnes and John executed their premarital agreement on June 27, 2007; thus, the Premarital Agreement Act applies, as it became effective on January 1, 1990. 750 ILCS 10/1 *et seq.* (West 2022). However, Agnes makes no argument under section 7 of the Premarital Agreement Act concerning whether the parties' agreement was unconscionable. In fact, all of Agnes' arguments rely on the common law which applied to antenuptial agreements executed prior to 1990, including whether the division of property was proportionate and whether the pending divorce would leave her in a state of penury as compared to John. This is improper.

¶ 28    Prior to the enactment of the Premarital Agreement Act, Illinois common law provided that a premarital agreement that governed property and maintenance rights was

> " 'valid and enforceable as long as three conditions are met: (1) the agreement does not create an unforeseen condition of penury due to one spouse's lack of property or employability; (2) the parties entered into the agreement with full knowledge, free of fraud, duress, or coercion; and 3) the agreement is fair and reasonable.' " *Kranzler*, 2018 IL App (1st) 171169, ¶ 63 (quoting *Berger v. Berger*, 357 Ill. App. 3d 651, 656 (2005)).

This is no longer the standard used for examining premarital agreements executed after the enactment of the Premarital Agreement Act in 1990. Accordingly, we reject Agnes' arguments to the extent that they rely on the common law analysis, and we will analyze the parties' agreement under the Premarital Agreement Act.

¶ 29    The Premarital Agreement Act allows parties to waive or modify their marital rights by entering into a valid premarital agreement, with limited grounds provided to find the agreement to be unenforceable. *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 55, 750 ILCS 10/4(a)(3), (a)(4) (West 2022). By entering into a valid premarital agreement, parties agree that

their enumerated rights at dissolution are no longer governed by applicable statutes where those rights are validly modified or waived in the agreement. *Woodrum*, 2018 IL App (3d) 170369, ¶ 55. The Premarital Agreement Act omits the prior common law requirement that an enforceable agreement must also be fair and reasonable and must not result in an unforeseen condition of penury for the party challenging the agreement. *Id.* Thus, under the Premarital Agreement Act, a court cannot invalidate a premarital agreement merely because the enforcement of the agreement would result in a disproportionate allocation of assets to one of the parties. *Id.*

¶ 30    Section 7 of the Premarital Agreement Act governs the enforceability of premarital agreements, providing:

"(a) A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:

(1) that the party did not execute the agreement voluntarily; or

(2) the agreement was unconscionable when it was executed and, before execution of the agreement, that party:

(i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(iii) did not have, or reasonably could have had, an adequate knowledge of the property or financial obligations of the other party." 750 ILCS 10/7(a) (West 2022).

¶ 31    We note that the circuit court's decision contained no discussion or application of the provisions of the Premarital Agreement Act in determining the validity of the parties' premarital agreement and instead relied on caselaw that interpreted premarital agreements that were executed prior to the enaction of the Premarital Agreement Act. However, even if the circuit court used an incorrect means of testing the parties' agreement, this court can affirm a circuit court's decision for any reason supported by the record, regardless of the circuit court's reasoning. *In re Marriage of Murphy*, 359 Ill. App. 3d 289, 300 (2005). If the decision of the circuit court is correct, it will not be reversed on appeal simply because an incorrect means was used to arrive at that decision. *Id.*

¶ 32    Upon review of the premarital agreement in the case at bar, we conclude that Agnes has failed to establish that the agreement is unconscionable pursuant to section 7(a) of the Premarital Agreement Act.

¶ 33    Here, Agnes makes no argument under section 7(a)(1) that she did not execute the agreement voluntarily, so we focus our discussion on whether the agreement is unconscionable under section 7(a)(2). Consequently, the parties' premarital agreement is enforceable unless Agnes was able to prove that the agreement was unconscionable when it was executed and that, before execution she was not provided a fair and reasonable disclosure of John's property and financial obligations, she did not voluntarily execute a written waiver of the disclosure, and she did not have, and could not have, knowledge of those matters. See 750 ILCS 10/7(a)(2) (West 2022).

¶ 34    We first look to whether Agnes waived her rights to the disclosure of John's property or financial obligations. After reviewing the parties' agreement, we find that there was no waiver by Agnes, in writing, to her right to the disclosure of John's property or financial obligations beyond

the financial affidavit. Under the Premarital Agreement Act, the only way that John could have been relieved of his statutory obligation of providing a fair and reasonable disclosure was by Agnes voluntarily and expressly waiving, in writing, any right to disclosure of John's property and financial obligations beyond the disclosures provided. See 750 ILCS 10/7(a)(2)(ii) (West 2022). Agnes did not execute such a waiver.

¶ 35    Next, we determine whether John's disclosure of his property or financial obligations were fair and reasonable. We conclude that Agnes did not establish that she was not provided a fair and reasonable disclosure of John's property or financial obligations at the time of execution of the premarital agreement. The requirement of a fair and reasonable disclosure focuses on the information disclosed and not on the party to whom the disclosure was made. *Woodrum*, 2018 IL App (3d) 170369, ¶ 65. In determining whether John provided enough information to constitute a "fair and reasonable" disclosure, this court has previously noted that the Illinois legislature did not adopt a "full" disclosure standard. See 750 ILCS 10/7(a) (West 2022). A "fair and reasonable" disclosure requires less than a complete disclosure, and the purpose of such disclosure is to ensure that each party has sufficient knowledge regarding the other party's financial circumstances in order to understand the nature of the legal rights being waived, with the burden to inform being on the disclosing party. *Woodrum*, 2018 IL App (3d) 170369, ¶ 66.

¶ 36    Here, the parties' attached written schedules of information regarding their income and property interests at the time the agreement was executed. Under the Premarital Agreement Act, the parties were required to disclose to each other their property and financial obligations, including their interests in real or personal property and their income and earnings. See 750 ILCS 10/2, 7(a) (West 2022). Agnes does not contend, nor do we find, that John did not provide a fair

and reasonable disclosure of his finances and property at the time the premarital agreement was executed. In fact, our review of John's financial disclosure reveals that it was very detailed and indicated that John had acquired substantial assets, property and money prior to the parties' marriage. Moreover, at what point prior to executing the agreement Agnes received John's disclosure and whether she reviewed the disclosure prior to executing the agreement are irrelevant factors in determining whether the information disclosed was "fair and reasonable." See *Woodrum*, 2018 IL App (3d) 170369, ¶ 68. Accordingly, we find that Agnes failed to meet her burden to establish that John's financial disclosure was not "fair or reasonable."

¶ 37     Next, we determine whether Agnes did not have, or reasonably could not have had, an adequate knowledge of John's property, finances or financial obligations. Here, the record shows that Agnes lived with John for three years prior to their marriage and the execution of the agreement. Agnes was thus familiar with his lifestyle and was provided with a written financial disclosure that indicated John had significant property holdings, business investments, insurance and other investment accounts. Agnes makes no argument that she did not have adequate knowledge of John's property, finances or financial obligations. Based on this, we find that Agnes had, or reasonably could have had, adequate knowledge of John's finances and property at the time the agreement was executed and thus failed to meet her burden under section 7(a)(2)(iii). 750 ILCS 10/7(a)(2)(iii) (West 2022).

¶ 38     As part of her appendix, Agnes included the *Dimitrov* case that she presented at the hearing on her motion to reconsider. That case is an unpublished order under Illinois Supreme Court Rule 23 and has no precedential value; however, it can be cited for persuasive purposes under Rule 23(e)(1) (eff. June 3, 2025). We have reviewed that case and find it to be distinguishable from and

not persuasive authority for the case at bar in several respects: (1) it involves an postnuptial agreement, signed almost four years after the parties were married; (2) the wife's attorney translated and explained the agreement to her and advised her not to sign; (3) the wife alleged that the husband threatened and coerced her to sign; and (4) it awarded 100% of all property that existed at the time of signing to the husband, which included marital property as the parties were married when the agreement was signed. In contrast, Agnes and John signed their premarital agreement prior to the marriage, and the agreement detailed the nonmarital property of both parties that existed at the time the agreement was signed. Based on those significant distinguishable facts, we decline to extend the determination made in the *Dimitrov* case to the case at bar.

¶ 39    Based on our review of the parties' premarital agreement and after applying the statutory factors for determining whether an agreement is unconscionable, we find that Agnes has failed to meet her burden of establishing that the parties' premarital agreement was unconscionable. Accordingly, the circuit court did not err in granting John's petition for declaratory judgment regarding the validity of the premarital agreement.

¶ 40                                  CONCLUSION

¶ 41    For the foregoing reasons, we affirm the circuit court's grant of John's petition for declaratory judgment regarding the validity of the parties' premarital agreement where Agnes failed to meet her burden of establishing unconscionability pursuant to section 7(a)(2) of the Premarital Agreement Act (750 ILCS 10/7(a)(2) (West 2022)).

¶ 42    Affirmed.